# **EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

In Re:                                          :     Chapter 11
                                                :
BRITESTARR HOMES, INC.,                         :     Bankruptcy Case 02-50811 (AHWS)
                                                :
        Debtor.                                 :
                                                :
                                                :
_____        :

## BRITESTARR HOMES, INC'S SECOND AMENDED PLAN OF REORGANIZATION

### INTRODUCTION

BRITESTARR HOMES, INC., the above-named debtor ("Debtor"), proposes the following plan of reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101 et seq.

Reference is made to the Second Amended Disclosure Statement of Britestarr (the "Disclosure Statement") relating to this Plan as approved by the Order of the United States Bankruptcy Court for the District of Connecticut. The Disclosure Statement contains information relative to the Debtor, its history and background, business operations and the assets of its Estate. The Disclosure Statement also summarizes and contains a discussion of the terms and conditions of this Plan.

Pursuant to § 1125(b) of the Bankruptcy Code, a vote to accept or reject this Plan cannot be solicited from a holder of a "Claim" (as defined below) until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to the "Claimants" (as defined below). All Claimants are encouraged to read this Plan and the Disclosure Statement in their entirety prior to voting to accept or reject this Plan.

1

*Subject to the restrictions on modifications set forth in § 1127 of the Bankruptcy*

*Code and the restrictions on modifications set forth in this Plan, the Debtor*

*expressly reserves its right to alter, amend or modify this Plan, one or more times,*

*prior to its Substantial Consummation (as defined below).*

### ARTICLE I

## DEFINITIONS AND RULES OF INTERPRETATION AND CONSTRUCTION

1.1    For purposes of this Plan, the following terms shall have the respective meanings hereinafter set forth:

1.1.1    "Administrative Claim" or "Administrative Expense" means a claim for costs and expenses of administration allowed under §§ 503(b), 507(a)(1) or 507(b) of the Bankruptcy Code.

1.1.2    "Allowed Amount" or "Allow", means, with respect to a particular Claim, (a) the dollar amount of a Claim that is listed in the Debtor's Schedules, as they may from time to time be amended in accordance with Rule 1009 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), as not disputed, contingent or unliquidated, if the Claimant of such Claim has not filed a proof of claim with the Bankruptcy Court within the applicable period of limitation fixed by the Bankruptcy Court pursuant to Rule 3003(c)(3) of the Bankruptcy Rules, or (b) if the Claimant has filed a proof of claim with the Bankruptcy Court within the applicable period of limitation fixed by the Bankruptcy Court pursuant to Rule 3003(c) of the Bankruptcy Rules or if a proof of claim for such Claimant is deemed filed under applicable law or by reason of an order of the Bankruptcy Court within such applicable period of limitation:  (i) the dollar amount stated in such proof of claim, if no objection to such proof of claim has been interposed by a party in interest within the applicable period of limitations fixed by the Bankruptcy Code or

2

applicable Bankruptcy Rules, or as otherwise fixed by the Bankruptcy Court, or (ii) such dollar amount as shall be fixed by an order of the Bankruptcy Court which has become a Final Order, if an objection has been interposed by a party in interest within the applicable period of limitations fixed by the Bankruptcy Code, applicable Bankruptcy Rules, or the Bankruptcy Court or, pending the determination of such objection, the dollar amount of such Claim, if any, which would be Allowed in the relevant Class if such pending objection were to be granted in full by the Bankruptcy Court, or (c) with respect to the allowance of fees and expenses pursuant to Section 330, 331, 503(b) of the Bankruptcy Code, such amount as shall be fixed by an order of the Bankruptcy Court which has become a Final Order.  To the extent required by applicable law, the Allowed Amount of each Secured Claim shall include interest that has accrued thereon from the Petition Date through and including the Effective Date, but interest accrued prior to, or from the Petition Date through and including the Effective Date shall not be included in the Allowed Amount of any other pre-Petition Date Claim or Interest.

1.1.3    "Allowed Claim" means a Claim against the Debtor for which an Allowed Amount has been determined.  Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such Claim.

1.1.4    "Allowed Interest" means only the interests in the Debtor that are held by Oak Point Property, Inc.

1.1.5    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101 et seq., Title 11 of the United States Code.

1.1.6    "Bankruptcy Court" means that unit of the United States District Court for the District of Connecticut consisting of those Bankruptcy Judges in regular active service in such

3

District, in which the Chapter 11 Case of the Debtor was transferred or such other court as may hereafter have jurisdiction of and act with respect to the Chapter 11 Case.

1.1.7   "Business Day" means any day except Saturday, Sunday and any other day on which the Office of the Clerk of the Bankruptcy Court is closed.

1.1.8 "Cash" means cash, cash equivalents and readily marketable securities and instruments including, without limitation, lawful currency and readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank on commercial paper.

1.1.9 "Chapter 11 Case" means the entire pending proceeding commenced by the Debtor's petition for reorganization filed under Chapter 11 of the Bankruptcy Code and styled *In re Britestarr Homes, Inc.*, and bearing case number 02-12411(CB) or, after transfer of venue, 02-50811(AHWS)

1.1.10   "Claim" means (a) a right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) a right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.1.11   "Claimant" means the holder of a Claim.

1.1.12   "Class" means a category of holders of Claims or Interests which are substantially similar to the other Claims or Interests in such Class, as classified pursuant to this Plan.

4

1.1.13  "Closing Date" means the first date on which (a) the order confirming this Plan is a Final Order, (b) all of the Claims against the Debtor's estate are Allowed by the passage of time or the entry of a Final Order, (c) and the Debtor and/or the Successor has a remediation plan approved by the State of New York's Department of Environmental Conservation and (d) the Successor has obtained the Plan Financing (as that term is defined in the Disclosure Statement).

1.1.14  "Confirmation Date" means the day on which the Bankruptcy Court enters the Confirmation Order on its docket.

1.1.15  "Confirmation Order" means the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

1.1.16  "Debtor" or "Britestarr" means Britestarr Homes, Inc., a subchapter S corporation incorporated under the laws of the State of New York.

1.1.17  "Disclosure Statement" means the written document entitled "Second Amended Disclosure Statement of Britestarr Homes, Inc." relating to this Plan filed by the Debtor pursuant to § 1125 of the Bankruptcy Code in connection with the Chapter 11 Case and approved by the Bankruptcy Court as containing "adequate information" (as the term is defined in § 1125(a)(1) of the Bankruptcy Code), as the same may be amended or modified and approved by the Bankruptcy Court, including any exhibits and schedules annexed thereto and any documents delivered in connection therewith.

1.1.18  "Disputed Claim or Interest" means any Claim or Interest or portion thereof, the allowance of which has not yet been determined, and with respect to which an objection shall have been interposed by the Debtor or any other party in interest on a timely basis, viz., prior to the Confirmation Date or such other date as may be fixed by order of the Bankruptcy Court.

5

1.1.19    "Disputed Claims or Interests Reserve" shall have the meaning set forth in § 8.3 hereof.

1.1.20    "Effective Date" means the sixtieth (60th) day following the Confirmation Date (but if such day is not a Business Day, then the Business Day following the sixtieth (60th) day, provided that no order staying confirmation or consummation of this Plan has been entered prior thereto which is still in effect on such date. If an order staying consummation or confirmation of this Plan has been entered, then Effective Date shall mean the earlier of the sixtieth (60th) Business Day following the date upon which (a) the Confirmation Order has become a Final Order, or (b) any stay of consummation of this Plan is no longer effective, provided that such latter date is more than sixty (60) days.

1.1.21    "Estate" means the estate of the Debtor created by § 541 of the Bankruptcy Code.

1.1.22    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (i) which is not the subject of an appeal, or (ii) which shall not have been reversed, stayed, modified or amended, or (iii) from which the time to appeal, seek review, certiorari or rehearing of such order shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Bankruptcy Rules.

1.1.23    "Impaired" means the legal, equitable and contractual alteration of one's rights to which a Claim or Interest attaches, or failure to cure any contractual default and reinstate the maturity of such Claim or Interest prior to default and compensate for any damages incurred as a result of the default.

1.1.24    "Net Recoveries" means all monies, property, or rights to or in property of any kind whatsoever received for or on account of the Post-Confirmation Litigation by way of a

6

satisfaction of judgment, settlement, or in any other way whatsoever, less the costs and expenses of the Post-Petition Litigation, including, without limitation, Post-Confirmation Trustee fees, attorney fees, expert fees, and all other litigation costs.

1.1.25   "Oak Point Property" means that certain 28-acre parcel of land located in Hunts Point, Bronx New York.

1.1.26   "OPP" means Oak Point Property, Inc., a corporation organized under the laws of the State of Delaware.

1.1.27 "Petition Date" means May 20, 2002.

1.1.28 "Plan" means this plan of reorganization and any amendment hereto or modification hereof.

1.1.29   "Post-Confirmation Litigation" means those claims asserted in *Britestarr Homes, Inc. v. Piper Rudnick, LLP*, Adversary Proceeding Number 03-5072, and any other causes of action possessed by the Debtor on the Petition Date that have not been fully litigated or liquidated prior to the confirmation of the Plan.

1.1.30   "Priority Claims" means any Allowed Claim, other than Administrative Claims and Priority Tax Claims, to the extent entitled to priority in payment under § 507(a) of the Bankruptcy Code.

1.1.31   "Priority Tax Claims" means all Claims against the Debtor entitled to priority under Section 507(a)(8) of the Bankruptcy Code, to the extent that such Claims are not Secured Claims.

1.1.32   "Professional Person" means any person retained or to be compensated pursuant to §§ 327, 328, 330 and 503(b) of the Bankruptcy Code.

7

1.1.34  "Reorganized Debtor" means Britestarr Homes, Inc. after the confirmation of this Plan and after the Closing Date, with the assets as provided for in this Plan, and subject only to the claims, interests and encumbrances provided for in this Plan.

1.1.35  "Schedules" means (i) the schedules of assets and liabilities, current income and expenditures, and executory contracts and unexpired leases and (ii) the statement of financial affairs, which were filed by the Debtor with the Bankruptcy Court in accordance with Bankruptcy Rule 1007(b).

1.1.36  "Secured Claim" means a Claim against the Debtor which is secured by a lien, charge, pledge, encumbrance or other security interest on property of the Debtor's Estate or which is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value of the interest of the holder of such Claim in such property or to the extent of the amount subject to setoff, as the case may be, as determined either by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code or by agreement between the Debtor and such Claimant.

1.1.37  "Substantial Consummation of this Plan" (or similar phrase) shall have the meaning set forth in § 1101(2) of the Bankruptcy Code.

1.1.38  "Successor" is the entity created pursuant to paragraph 7.1.

1.1.39  "Tax Lien" means a claim arising from a tax which is or has become a Secured Claim.

1.1.40  "Tort Claim" means a Claim against the Debtor which is not a Secured Claim, an Unsecured Claim, a Priority Claim, an Administrative Claim, or a Priority Tax Claim, and which is founded in tort.

1.1.41  "Unsecured Claim" shall mean a Claim which is not secured, including any Claim listed as such in the Schedules (whether or not such Claim might be otherwise considered an

8

Interest), or any Claim held by a trade creditor and any Claim for damages held by a party to a contract that is or has been rejected by the Debtor, but does not include Secured Claims, Administrative Claims, Priority Tax Claims, Priority Claims, Tort Claims or an Interest in the Debtor. Any Interest or Claim listed as an Unsecured Claim in the Schedules, other than Tort Claims, shall be treated as such for purposes of this Plan.

1.1.42  All other terms used herein which are defined in the Bankruptcy Code or the Bankruptcy Rules but are not otherwise defined herein shall have the meanings ascribed to them in the Bankruptcy Code or the Bankruptcy Rules.

1.2  For purposes of this Plan, the following rules of interpretation and construction shall apply:

1.2.1  For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in this Plan to sections, articles and exhibits are references to sections, articles, and exhibits of or to this Plan; (e) the words "hereof," "hereto," "herein," "hereunder" and others of similar import refer to this Plan in its entirety rather than to only a particular portion of this Plan; (f) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (g) the term "or" as

9

used herein shall not be construed as exclusive unless the context clearly requires otherwise; and (h) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply.

    1.2.2   All exhibits and Schedules to this Plan are incorporated herein by reference and made a part hereof as if set forth in full herein.

    1.2.3   In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

    1.2.4   Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Connecticut, without giving effect to the principles of conflict of laws thereof.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS

    2.1   Administrative Expenses shall be paid in such amounts as are agreed by the Debtor or allowed by the Bankruptcy Court and shall be paid in cash and in the full amount of the Allowed Administrative Expense, or other payments as agreed upon by the Debtor and any particular Administrative Claimant.

    The distribution to holders of Administrative Claims shall occur on the Closing Date, or when an Order allowing such expense becomes a Final Order, whichever is later, unless other terms of payment are agreed upon between the holder of such Administrative Expense and the Debtor.  Holders of Administrative Claims are not classified pursuant to § 1123(a)(1) and therefore have no right to accept or reject the Plan.

The Debtor anticipates that the total unpaid Administrative Expense claims asserted against the Estate on the estimated date of Confirmation shall equal approximately $610,000. This estimate and the items it comprises as detailed below are merely for working purposes only in aid of projecting payments under the Plan. The estimates are subject to adjustment in accordance with the determination of expenses actually incurred and allowed, and any interim payments that may be allowed and disbursed. The Debtor reserves the right to object to any such claims. The actual Administrative Expenses may be lower or higher in both itemized and total amount. The estimated Administrative Expenses the Debtor anticipates being asserted are itemized as follows:

(1) Court expenses and fee due to the Office of the United States Trustee estimated to be in the amount of zero dollars ($0).

(2) Attorney's fees to Ivey, Barnum & O'Mara, Chapter 11 counsel to the Debtor, estimated to be in the amount of two hundred thousand dollars ($200,000) after application of a retainer received prior to date of this Plan. (Subject to Court Approval.)

(3) Attorney's fees to Reid & Riege, P.C., counsel to the Official Committee of Unsecured Creditors, estimated to be in the amount of seventy five thousand dollars ($75,000). (Subject to Court Approval.)

(4) Attorney's fees to Stroock & Stroock & Lavan LLP, special tax counsel to the Debtor, estimated to be in the amount of two hundred thousand dollars ($200,000). (Subject to Court Approval.)

(5) Tax claims of the City of New York in the approximate amount of two hundred and ten thousand dollars ($210,000).

11

With the exception of Professional Persons engaged in the Post-Confirmation Litigation, the post-confirmation Debtor, without need of further approval of the Bankruptcy Court, shall pay fees and expenses of Professional Persons incurred in aid of execution of this Plan after Confirmation. In addition the Debtor shall pay quarterly fees due the Office of the United States Trustee until a decree is entered closing this case.

Tax Claims include all Allowed Unsecured Claims of governmental entities allowed priority within the definition of § 507(a)(8), excluding penalties not for actual pecuniary loss. Certain other types of claims also receive priority under § 507(a). Other than the administrative secured tax claims stated above, the Debtor believes no Priority Claims or tax claims exist.

Tax claims will be paid within six years (6) of the date of assessment, or in Cash on the Closing Date, as those alternatives are allowed under § 1129(a)(9). Tax claims will retain their lien, if any, until paid in full.

## ARTICLE III

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

3.1    The following is a designation of the Classes of Claims and Interests under this Plan. In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims described in Article II of this Plan, have not been classified and are excluded from the following Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in another Class or Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Class or Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that

12

Class and has not been paid, released or otherwise satisfied in whole or in part, as the case may be, before the Effective Date.

3.1.1    **Class 1 Claims** shall consist of secured Tax Liens, which are now all held by the City of New York, comprising all outstanding real property taxes that were last payable without penalty prior to the Petition Date, plus interest thereon to the Petition Date at the rate allowed by state statute, and lien fees incurred prior to the Petition Date.

3.1.2    **Class 2 Claims** shall consist of the holders of Secured Claims on the Oak Point Property, namely Galea & Kruse.

3.1.3    **Class 3 Claims** shall consist of the holders of Allowed Unsecured Claims in excess of $500,000, namely OPP, ABB-EV, Inc., and Jeffrey Buss -- Smith, Buss & Jacobs.

3.1.4    **Class 4 Claims** shall consist of the holders of Allowed Unsecured Claims in an amount less than $500,000.

3.1.5    **Class 5 Claims** shall consist of the remediation and penalty claim of the State of New York, Department of Environmental Conservation.

3.1.3    **Class 6 Interests** shall consist of the interests held by OPP.

Any holder of a Claim or Interest in Classes 1 through 6 who fails to object in writing to the classifications provided in this Plan by filing said objection with the Bankruptcy Court, with service upon the Debtor's counsel by the date set for objections to this Plan, shall be deemed to have accepted such classification and to be bound thereby.

**ARTICLE IV**

**IDENTIFICATION OF IMPAIRED AND UNIMPAIRED CLASSES**

Classes 1, 2, 3 and 5 are Impaired under this Plan.  Classes 4 and 6 are unimpaired.

13

### ARTICLE V

### TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

5.1     The holders of an Allowed Class 1 Claim shall be paid in full in monthly installments of principal and interest over six years with interest at 18%, compounded daily. The NYC Secured Tax Claim may be treated in a different manner pursuant to an agreement between the City of New York and the Debtor after approval by the Bankruptcy Court. The City of New York shall retain its lien on the Oak Point Property until paid.

5.2     The holders of Allowed Secured Claims in Class 2 (if any) will receive payment in monthly installments of principal and interest over ten years with fixed interest at 5.28% according to a 20-year amortization schedule with a balloon payment such that the entire balance outstanding shall be due and payable in the one hundred and twenty first (121st) month. Galea & Kruse may receive payment in a different manner pursuant to an agreement between Galea & Kruse and Debtor, and after approval by the Bankruptcy Court. Galea & Kruse shall retain their lien on the Oak Point Property until paid.

5.3     The holders of Allowed Unsecured Claims in Class 3 will waive any distribution from the Bankruptcy Estate in exchange for contingent payments from the Successor and its affiliates in an amount no greater than the amount of each such Class 3 Claim. Holders of Class 3 Claims may be treated in a different manner pursuant to an agreement between the claimant and the Debtor after approval by the Bankruptcy Court.

5.4     The holders of Allowed Unsecured Claims in Class 4 will receive payment in full on the later of the Closing Date or Allowance with interest at the federal judgment rate of interest applicable on the Petition Date. The Claim of any particular Unsecured Creditor may be treated

14

in a different manner pursuant to an agreement between an Unsecured Creditor and the Debtor after approval by the Bankruptcy Court.

5.5    The holder of the Allowed Class 5 Claim shall receive compliance with the NYS DEC Order and payment of the NYS DEC penalty in an agreed upon amount pursuant to an agreement between the NYS DEC and the Debtor or the Successor.  The claims created by enforcement orders shall not be discharged pursuant to Article XIII hereof.

5.6    Holders of Interests in Class 6 shall maintain their Interests.

### ARTICLE VI

### RIGHT OF PRE-PAYMENT

The Debtor shall have the absolute right of pre-payment of its financial obligations pursuant to this Plan, in whole or in part, without penalty.

### ARTICLE VII

### EXECUTION OF THIS PLAN

7.1    The Successor shall be a corporation organized under the laws of the State of Delaware, substantially in accordance with Schedule 7.1 attached hereto.  The interests in the Successor shall be owned in accordance with this Plan and Schedule 7.1 attached hereto.

7.2    Upon the Closing Date, the Oak Point Property shall be transferred to the Successor free and clear of all claims, encumbrances, and other interests, other than as expressly provided for herein.  The Debtor shall take all actions necessary and appropriate to effectuate said transfer.

7.3    All payments of Cash to be made pursuant to this Plan shall be made from contributions by the Successor, or its designee.

7.4     On the Closing Date, the Oak Point Property shall be transferred to the Successor free and clear of all claims, encumbrances and other interests, other than as expressly provided for herein. The Debtor shall take all actions necessary and appropriate to effectuate said transfer. The Closing Date is the first date on which (a) the order confirming the proposed plan is a Final Order, (b) all of the claims against the Debtor's bankruptcy estate are resolved by final orders of this Court, (c) the Debtor and/or the Successor have had a remediation plan approved by the DEC, and (d) the Successor has obtained the Plan Financing (as that term is defined in the Second Amended Disclosure Statement of Britestarr Homes, Inc.).

If the conditions precedent to the Closing Date do not occur within 270 days of the Effective Date, then the Oak Point Property will be sold at auction under the auspices of the Bankruptcy Court as soon as practicable.  The auction will be conducted pursuant to orders of the Bankruptcy Court entered after the expiration of the 270 day period following the Effective Date. The proceeds of said auction will be distributed to creditors in accordance with the priority scheme of the Bankruptcy Code, provided however that the Debtor may seek an extension of the 270 day period to satisfy the conditions precedent upon an order of the Bankruptcy Court finding good cause for such an extension, after notice and a hearing, with an opportunity for objections by parties in interest.

7.5     In the event that any Impaired Class shall fail to accept this Plan in accordance with § 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request the Bankruptcy Court to confirm this Plan in accordance with § 1129(b) of the Bankruptcy Code or amend this Plan pursuant to the terms set forth herein.

## ARTICLE VIII

## RESOLUTION OF DISPUTED CLAIMS AND INTERESTS AND RESERVES

8.1     An objection to the allowance of a Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest at any time prior to the Effective Date.  The Disclosure Statement describes certain Claims that are disputed.  The Debtor reserves its right to make further objections to any asserted Administrative Expenses, Claims or Interests on or prior to Substantial Consummation of this Plan.

8.2     A Proof of Claim may be amended only as agreed upon by the Debtor and the holder of such Claim (or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules) prior to the hearing on the confirmation of this Plan.

8.3     Until such time as a Disputed Claim shall have become an Allowed Claim, the holder of such Disputed Claim will not participate in any distributions made to other members of its Class.  On the Closing Date, the Debtor shall establish a Disputed Claims Reserve and shall reserve for the account of each holder of a Disputed Claim, in an account (bearing interest if the distribution to be made to the holder of the Claim or Interest is to be made in Cash), the amount of Cash which would otherwise be distributable to such holder were such Disputed Claim an Allowed Claim on the Closing Date, or such other amount as the holder of such Disputed Claim and the Debtor may agree upon.  Notwithstanding the foregoing, the Debtor may request the Bankruptcy Court to conduct proceedings to estimate the value of any Disputed Claim and, based thereon, authorize the Debtor to reserve the amount of Cash which would otherwise be distributable to the holder of such Claim deemed an Allowed Amount on the Confirmation Date in the amount or nature claimed.  Additionally, with respect to the Disputed Claims, to the extent that all or a portion of such Claims is an Allowed Claim and is treated as a Priority Claim under

17

§ 507(a)(8) of the Bankruptcy Code, the Debtor shall reserve an amount of Cash necessary to comply with the provisions of § 1129(a)(9)(c) of the Bankruptcy Code. The Cash so reserved for the holder of such Disputed Claims shall be distributed to such holders, solely to the extent that such Disputed Claims shall be allowed and therefore become an Allowed Claim.

8.4    To the extent that a Disputed Claim is disallowed by Final Order of the Bankruptcy Court, in whole or in part, the Debtor will deliver to the Successor, from time to time as is practicable, that portion of the Disputed Claim Reserve allocated to the disallowed Claim.

8.5    Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall be in an amount equal to a rounding of such fraction to the nearest whole cent (rounding down in case of fractions of 0.5 or less).

8.6    Upon final distribution of all amounts required to be paid under this Plan, all Claims against the Debtor shall be deemed fully and finally satisfied, settled, released and discharged, with prejudice.

## ARTICLE IX

### PROVISIONS FOR THE ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND LEASES

The Debtor hereby rejects any and all executory contracts and leases except those which shall, prior to the Effective Date, have been assumed by the Debtor or which shall be the subject of pending motions to assume by the Debtor.

## ARTICLE X

### PROVISIONS FOR MODIFICATION OF THIS PLAN

The Debtor may propose amendments or modifications of this Plan at any time prior to the Confirmation Date with leave of the Bankruptcy Court. Subsequent to the Confirmation

18

Date, the Debtor may, with approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interests of Claimants or holders of Interests, remedy any defect or omission, or reconcile any inconsistencies in this Plan, or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of this Plan.  The foregoing provisions of this Article X do not limit the ability of the Debtor to modify this Plan under § 1127 of the Bankruptcy Code and Bankruptcy Rules.

## ARTICLE XI

## LITIGATION

Except as may otherwise be provided in any settlement agreement annexed hereto, if any, all litigation in which the Debtor is a plaintiff, including, without limitation, the Post-Confirmation Litigation, and all contested matters in which the Debtor is a movant, shall be continued by the Debtor.  All Net Recoveries from the Post-Petition Litigation shall be retained by the Reorganized Debtor.

## ARTICLE XII

## CLOSING OF THE CASE

12.1   At such time as this Chapter 11 Case shall have been substantially administered, that is, after the Closing Date, when all things requiring action by the Bankruptcy Court shall have been done, all Post-Confirmation Litigation has been finally concluded by way of judgment, settlement, or otherwise, and there has been Substantial Consummation of this Plan, the Chapter 11 Case shall be closed.  To close the Chapter 11 Case, the Debtor shall file an application for final decree showing that the Chapter 11 Case has been substantially administered and that there has been Substantial Consummation of this Plan.  The Bankruptcy Court may conduct a hearing thereon if requested by any Claimant, holder of an Interest, or any persons

19

specially requesting same, subsequent to which an order approving the Debtor's report and closing the Chapter 11 Case may be entered.

12.2    In the period subsequent to confirmation of this Plan, but prior to closing of the Chapter 11 Case, the Debtor may continue to avail itself of the services of Professional Persons whose employment were approved at or prior to the Confirmation Date in completing administration of the Chapter 11 Case and in the consummation and performance of this Plan. If necessary, with approval of the Bankruptcy Court, the Debtor may employ additional Professional Persons to render services in and in connection with the Chapter 11 Case. With respect to services rendered and expenses incurred in or in connection with the Chapter 11 Case by any Professional Person during such period, the Professional Person may render periodic billings therefor to the Debtor which shall promptly pay same.

### ARTICLE XIII

### DISCHARGE OF INDEBTEDNESS

Except as otherwise specifically provided for in this Plan, the confirmation of this Plan shall discharge the Debtor as provided in Section 1141 of the Bankruptcy Code, and shall include, without limitation, a discharge of the Debtor from any debt or Claim of whatever nature that arose before the date of Confirmation, including specifically but not limited to any and all liabilities arising from any mortgage secured by, or lien or other encumbrance on, the Estate assets or other property except as set forth in the Plan, and any debt of a kind specified in §§ 502(f), (g), (h) or (i) of the Bankruptcy States Code, whether or not (i) a proof of claim based on such debt is filed or deemed filed under § 501 of said Title; (ii) such Claim is allowed under § 502 of such Title; or (iii) the holder of such Claim has accepted the Plan.

20

## ARTICLE XIV

## RETENTION OF JURISDICTION

14.1    In addition to the continued jurisdiction of the Bankruptcy Court subsequent to the Confirmation Date which is provided for as a matter of law by the Bankruptcy Code and Bankruptcy Rules, the Bankruptcy Court shall retain jurisdiction for the following purposes:

14.2    To fix allowances of compensation;

14.3    To determine the classification of any Claim or Interest, the determination of such objections as may be filed to Claims, or Interests, and the re-examination of the allowance of any Claim or Interest;

14.4    To determine any and all proceedings to set aside liens or encumbrances, and to recover any preferences, transfers, assets or damages to which the Debtor may be entitled under applicable provisions of the Bankruptcy Code or other federal, state or local law;

14.5    To hear and determine (a) all applications for rejection or termination of executory contract(s) filed prior to the Confirmation Date, and (b) all Claims arising from the rejection of any executory contracts, and to consummate the rejection and termination thereof;

14.6    To adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any rents, proceeds or profits thereof and to set aside and/or determine the extent and priority of liens or encumbrances;

14.7    To adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the Chapter 11 Case, including those effected by the confirmation of this Plan;

14.8    The Bankruptcy Court shall have exclusive jurisdiction to determine all questions and disputes regarding title to the Debtor's assets, and determination of all causes of action,

21

controversies, and disputes or conflicts, whether or not subject to actions pending as of the Confirmation Date, between the Debtor and any other party, including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code;

14.9   To recover assets wherever located, or judgments by reason of preferences, transfers of assets or damages to which the Debtor may be entitled under applicable law;

14.10   To correct of any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to implement the purposes and intent of this Plan;

14.11   To enforce and interpret the terms and conditions of this Plan and any settlement agreement annexed hereto and to determine all controversies and disputes arising under or in connection with this Plan or any settlement agreement annexed hereto; subject to the sole exception that to the extent any settlement agreement as between the Department of Environmental Conservation and the Debtor requires interpretation of the ECL or any provision of New York State laws and/or regulations, disputes with respect to such statutory interpretation shall be subject to the sole and exclusive jurisdiction of the Courts of the State of New York;

14.12   To modify this Plan subsequent to the Confirmation Date, pursuant to the Bankruptcy Code and Rules;

14.13   To adjudicate and determine any cause of action provided for under this Plan or the Confirmation Order including, without limitation, the Post-Confirmation Litigation and any and all claims under § 505 of the Bankruptcy Code;

14.14   To determine such other matters as may be set forth in the Confirmation Order or for which relief may be granted under the Bankruptcy Code or Bankruptcy Rules;

22

14.15 To enter any order, including injunctions, necessary to enforce title, rights and power of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Bankruptcy Court may deem appropriate;

14.16 To hear any matter brought on by proper application by a Claimant or holder of an Interest claiming that payments or distributions pursuant to this Plan have not been properly made, in terms of the amount, timing, or otherwise;

14.17 To make such other orders as are necessary or appropriate to implement the provisions of this Plan;

14.18 To enter a Final Order closing the Chapter 11 Case; and

14.19 To implement the provisions of this Plan in the manner provided under §§ 1142(a) and (b) of the Bankruptcy Code.

## ARTICLE XV

## MISCELLANEOUS AND ADDITIONAL PROVISIONS

15.1   If any payment or act under this Plan shall be required to be made or performed on a date which shall be a Saturday, Sunday or legal holiday, then the making of such payment or the performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date.

15.2   If any payment required under this Plan shall be made by mail, such payment shall be deemed to have been paid on the day when such payment shall have been mailed.

15.3   Any notice required to be provided under this Plan to the Debtor shall be made in writing and addressed to Britestarr Homes, Inc. c/o Ivey, Barnum & O'Mara , 170 Mason Street, Greenwich, Connecticut 06830, Attn: Melissa Zelen Neier, Esq.

23

15.4    Except as may otherwise be agreed to by the Debtor and the holder of a particular Claim or Interest any property or notice to which a Claimant or holder of an Interest shall become entitled to receive under the provisions of this Plan, shall be delivered by regular mail, postage prepaid.  Property or notice delivered in accordance with this subparagraph shall be deemed to have been delivered to the holder of such Claim or Interest regardless of whether such property or notice shall have been actually received by such Claimant or holder of an Interest.

15.5    Any party may change the address to which notices are to be sent to it by giving notice to such other party in the manner set forth herein, and notices shall be deemed received on the fifth business day subsequent to mailing.

15.6    Unless the holder of a Claim or Interest advises the Debtor and its attorneys in writing of a change of address, all distributions or notices shall be sent to the Claimant or holder of an Interest at his or its address as stated in the Schedules or as stated in a properly filed proof of claim or Interest. The Debtor or any Professional Person retained by the Debtor shall have no obligation to locate the holder of a Claim or Interest whose distribution or notice is properly mailed, but nevertheless returned. Any distribution that shall be returned because of the inability to locate such holder shall be treated as an unclaimed distribution.  In the event that any distribution of property remains unclaimed for a period of 180 days (or if said 180th day shall not be a Business Day, then the next business day subsequent to said 180th day) subsequent to it having been delivered to the holder entitled thereto, such unclaimed distribution shall, on the 181st day (or if said 181st day shall not be a Business Day, then the next business day subsequent to it having been delivered to the holder entitled thereto, be deemed forfeited by such holder, whereupon all right, title and interest in and to such unclaimed distribution, including all interest thereon shall immediately and irrevocably revert to the Debtor.

24

15.7   In all references herein to any person, including, but not limited to, any parties, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.

15.8   The section headings contained in this Plan are for convenience of reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

15.9   On or prior to the Effective Date, the Debtor shall execute such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

15.10   Except to the extent that the Bankruptcy Code shall be applicable, all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Connecticut.

15.11   If any provision of this Plan shall be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

15.12   The Debtor may, but shall not be required, to, set off against any Claim or Interest and the distributions made or to be made pursuant to this Plan in respect of such Claim or Interest, claims of any nature whatsoever that the Debtor's Estate may have against the holder of such Claim or Interest, but neither the failure to do so nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Debtor's Estate of any Claim that the Debtor's Estate may have against the holder of such Claim or Interest.

15.13   In computing any period of time prescribed or allowed by this Plan, the day of the act or event from which the designated period begins to run shall not be included. The last day of

the period so computed shall be included, unless it shall be a Saturday, a Sunday, or a legal holiday, in which event the period shall run until the end of the next business succeeding day.

15.14   This Plan and all of its provisions shall be binding upon and inure to the benefit of the Debtor, Claimants, holders of Interests, all other parties in interest, and their respective successors, assigns, heirs and distributees.

15.15   In the event of any inconsistency between the provisions of this Plan and any settlement agreement annexed hereto, any document or agreement prepared, or entered into,

15.16   Pursuant to the terms of said settlement agreement and documents and agreements, the terms of said settlement agreements and documents and agreements shall prevail and govern.

**[THE REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**[SIGNATURES ARE ON FOLLOWING PAGE]**

Dated at Bridgeport, Connecticut this 31st day of March, 2004.

DEBTOR-IN-POSSESSION
BRITESTARR HOMES, INC.

By: _____

Steven E. Smith, President
Britestarr Homes, Inc.
Duly Authorized

COUNSEL TO THE DEBTOR:
Melissa Zelen Neier, Esq.
Ivey, Barnum & O'Mara
170 Mason Street
Greenwich, CT
(203) 661-6000

26

# SCHEDULE 7.1

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## OAK POINT PROPERTY LLC

This Limited Liability Company Agreement (the "Agreement") of OAK POINT PROPERTY LLC is entered into by and between natural persons, corporations, limited liability companies and other legal entities set forth on Schedule 1 hereto (the "Members").

The Members hereby form a limited liability company pursuant to and in accordance with the Limited Liability Company Law of the State of New York, as amended from time to time (the "LLCL"), and hereby agree as follows:

1.      *Name.* The name of the limited liability company formed hereby is "OAK POINT PROPERTY LLC" (the "Company").

2.      *Purpose.* The Company is formed for the object and purpose of, and the nature of the business to be conducted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the LLCL and engaging in any and all activities necessary or incidental to the foregoing.

3.      *Term.* The term of the Company shall be perpetual unless sooner dissolved in accordance with the LLCL.

4.      *Office.* The business address of the Company shall be 250 Neptune Circle, Brick, New Jersey 08723, or at such other place as the Members shall, from time to time, determine.

5.      *Members.* The names and the addresses of the Members are set forth on Schedule 1 hereto.

6.      *Units; Capital Contributions.* Equity ownership of the Company shall be divided into units (collectively, the "Units"). Each Unit shall have the same rights and preferences and shall be issued to the Members for the consideration set forth in this Agreement. Each Member shall initially hold the number of Units set forth opposite his or her name on Schedule 1 hereto. The initial contribution by each Member for his or her Units is set forth on Schedule 1, all of which has been contributed by such Member on the date hereof.

7.      *Additional Contributions.* The Company may, but need not, accept additional capital contributions from the Members. No Member shall be required to make any additional capital contribution to the Company.

8.      *Powers; Management.*

(a)      The business and affairs of the Company shall be managed by the Members. The Members shall have the power to do any and all acts necessary or convenient to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise,

possessed by members under the LLCL. The Members may, from time to time, elect officers of the Company with such title or titles as they deem appropriate, and may authorize such persons as they deem appropriate to act on behalf of the Company.

(b)    A Member or Members are authorized to act for, sign for and bind the Company only if the Member or Members doing so constitute a Majority in Interest or have been authorized to do so in writing by Members who constitute a Majority in Interest.

(c)    For purposes hereof, "Majority in Interest" shall mean a Member or Members who hold, in the aggregate, more than 50% of the Units outstanding as of the date on which such Member or Members take the respective action.

9.    *Capital Accounts.*  A capital account ("Capital Account") shall be maintained for each Member on the books of the Company. Each Member's Capital Account shall initially equal the amount of cash or the fair market value of any property or services contributed, or claims exchanged, by such Member in accordance with Section 6. Each Member's Capital Account shall be maintained in accordance with the rules contained in United States Treasury Regulations Section 1.704-1(b).

10.    *Allocation of Profits and Losses.*  The Company's profits and losses for each fiscal year shall be allocated among the Members in proportion to the number of Units owned by the Members.

11.    *Distributions.*  All distributions, whether of cash or in kind, shall be made to the Members in proportion to the number of Units owned by the Members at such time or times and in such amounts as the Members may determine.

12.    *Withholding.*  To the extent the Company is required by law to withhold or to make payments on behalf of or with respect to any Member, the Company shall withhold such amounts and make such tax payments as so required. All such amounts withheld or paid on behalf of a Member shall, at the option of the Company, be promptly paid to the Company by such Member or be repaid by reducing the amount of any distributions which would otherwise have been made to such Member.

13.    *Additional Members.*  One or more additional or substitute Members may be admitted to the Company only with the consent of the Members who constitute a Majority in Interest.

14.    *Confidentiality.*  Each of the Members shall insure that any information regarding the Company or its business, assets, operations and customers which it may learn is treated by it in strict confidence and shall not make use of (except with respect to the Company) or disclose such information, unless such information (a) is known to the Member prior to learning of it from the Company, (b) is obtained by such Member from a source other than the Company which source (i) did not require such Member to hold such secrets or information in confidence and (ii) did not limit or restrict such Member's use thereof, (c) becomes public knowledge otherwise than through the fault of the Member seeking to use or disclose such knowledge or (d)

-2-

is required to be disclosed by law or pursuant to an order of a governmental agency or a court of competent jurisdiction. This provision shall survive termination of this Agreement.

15. *Transfers of Units; Rights of First Refusal; Withdrawal.*

(a) No Member may sell, assign, pledge, hypothecate, transfer or otherwise dispose of all or any part of its Units without the prior written consent of each of the other Members.

(b) Notwithstanding the provisions of Section 16(a), if any Member (the "Selling Member") desires to transfer any Units (the "Offered Units"), such Selling Member shall first obtain a bona fide written offer for such disposition from an independent and unrelated third party. Upon receipt of such offer, the Selling Member shall deliver to the Company written notice (the "Notice") setting forth the terms and conditions for the disposition (which must be for cash), and the name and address of the person making such offer, together with a copy of the offer. The Company shall have the option to purchase all, but not less than all, of the Offered Units upon the same terms and conditions set forth in the Notice. Such option shall be exercised by written notice (the "Company Notice") delivered by the Company to the Selling Member within 30 days after receipt by the Company of the Notice, which Notice shall specify the time (not more than 30 days after the date thereof) and a place of closing. At closing, payment shall be made to the Selling Member by certified or bank cashier's check made payable to the order of the Selling Member, or by wire transfer of immediately available funds. If the Company shall not elect to acquire all the Offered Units, the Selling Member may make a disposition of any Offered Units not purchased, but only to the person making the bona fide offer on terms and conditions no more favorable to such person than those contained in the Notice; provided, however, that such disposition must occur within 90 days after the expiration of the 30 day period and the acquirer must agree to be bound by all the provisions of this Agreement, including this Section 16(b). If such disposition has not been consummated within such period, the Offered Units shall again become subject to all of the restrictions of this Agreement.

(c) A Member may withdraw from the Company in accordance with the LLCL.

16. *Tax Matters Member; Tax Decisions.*

(a) Oak Point Property, Inc. shall be the Company's "tax matters member" and, in such capacity, shall have all powers and responsibilities provided in Section 6221, et seq., of the Internal Revenue Code of 1986, as amended (the "Code"). The Company shall pay and be responsible for all reasonable third-party costs and expenses incurred by the tax matters member in performing those duties.

(b) The Members shall make all applicable elections, determinations and other decisions for the Company relating to federal, state or local tax matters including, without limitation, whether the Company shall make the election described in Section 754 of the Code and the positions to be taken on the Company's tax returns. The Company shall cause to be delivered to each Member within 90 days after the expiration of each fiscal year an annual report containing all Company information necessary for the preparation of the federal, state and local income tax returns of such Member.

-3-

17.     *Liability of the Members.* The Members shall not have any liability for the obligations or liabilities of the Company except to the extent provided in the LLCL.

18.     *Exculpation of the Managers.* A manager shall not be liable for any breach of duty in such capacity, except that if a judgment or other final adjudication adverse to him establishes that his or her acts or omissions were in bad faith or involved intentional misconduct or a knowing violation of law or that he personally gained in fact a financial profit or other advantage to which he was not legally e. titled or that with respect to a distribution to Members his or her acts were not performed in accordance with the LLCL.

19.     *Amendments.* This Agreement may be amended only by written instrument executed by the Members who constitute a Majority in Interest.

20.     *Governing Law.* This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York without reference to principles of conflicts of law, all rights and remedies being governed by such laws.

21.     *Indemnification.*

(a)     Any person who was or is a party or threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (including, without limitation, an action by or in the right of the Company) by reason of the fact that he or she is or was a Member, a manager, or an officer, employee or agent of the Company (or an officer, director, member, shareholder, employee or agent of any such person or an affiliate of any such person) (hereinafter an "indemnitee"), shall be indemnified and held harmless by the Company against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such indemnitee in connection with such action, suit or proceeding, if the indemnitee acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the Company, and with respect to any criminal action or proceeding, had no reasonable cause to believe such conduct was unlawful. The termination of the proceeding, whether by judgment, order, settlement, conviction or upon a plea of <u>nolo</u> <u>contendere</u> or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he or she reasonably believed to be in or not opposed to the best interests of the Company and, with respect to any criminal action or proceeding, had reasonable cause to believe such conduct was unlawful.

(b)     All reasonable expenses incurred by or on behalf of the indemnitee in connection with any suit, action or proceeding, may be advanced to the indemnitee by the Company.

(c)     The rights to indemnification and to advancement of expenses conferred in this Section 23 shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, agreement, action of the Members or otherwise.

-4-

(d)     The indemnification and advancement of expenses provided by this Section 21 shall continue as to a person who has ceased to serve in the relevant capacity and shall inure to the benefit of the successors, heirs, executors and administrators of such person.

22.     *Articles of Organization.*  The undersigned hereby agree to the terms of, and approve, adopt and ratify the filing of, the Articles of Organization in the form attached hereto as Exhibit 1.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEROF, the undersigned have duly executed this Limited Liability Company Agreement as of the __day of _____, 2004.

## SCHEDULE 1

## MEMBERS

| Name and Address | Capital Contribution | Number of Units Owned |
|---|---|---|
| Oak Point Property, Inc.<br>250 Neptune Circle<br>Brick, NJ 08723 | $30,575,192.89 | 49 |